IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL M. CARRAHER                                                           PLAINTIFF

                    v.                              Civil No. 11-3017

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                               DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Daniel Carraher, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed his applications for SSI and DIB on April 25, 2008, alleging disability since August 1, 2003, due to various impairments. Tr. 131-140, 165-176, 177-178, 204-210. His claims were denied at both the initial and reconsideration levels. Tr. 87-99. An administrative hearing was held on August 21, 2009. Tr. 23-61. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 37 years old and possessed a high school education. Tr. 175. He had past relevant work ("PRW") experience as a food service manager, waiter, maintenance worker, and laborer in a lumberyard. Tr. 37-32, 167.

On January 11, 2010, the ALJ found that Plaintiff's degenerative disk disease ("DDD") of the cervical spine, seizure disorder, depression, and borderline intellectual functioning ("BIF") were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.

4. Tr. 71-73. After partially discrediting plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work involving occasional climbing (ramps and stairs), balancing, stooping, crouching, and crawling and no climbing ladders, stairs and ramps. The ALJ also concluded that Plaintiff must avoid even moderate exposure to all workplace hazards consistent with normal seizure precautions such as heights, driving, and untended moving machinery. She also noted that Plaintiff had a limited education. Tr. 73-77. With the assistance of a vocational expert, the ALJ found plaintiff could return to his PRW as a deliverer and banquet waiter as those positions were actually performed by Plaintiff. Tr. 77-78.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 28, 2011. Tr. 1-7. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 9.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.     Discussion:

Under the regulations, "if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the

3

date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g., Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992); *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir. 1992). Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

In the present case, Plaintiff submitted a great deal of additional medical evidence that was considered by the Appeals Council prior to their denial of review. In considering the record as a whole, including the new evidence submitted, we note that the ALJ failed to find Plaintiff's right knee impairment to constitute a severe impairment. The ALJ noted that Plaintiff underwent surgery to correct a fractured patella in early June 2009[1], but was noncompliant with rehabilitation measures following surgery. While we do agree that Plaintiff removed his knee brace prematurely and against medical advice, necessitating a second surgery ten days following the first, additional records also reveal that, in spite of treatment compliance, Plaintiff continued to experience chronic right knee pain and additional seizures resulting in exacerbation of his knee pain. In December, 2009, Dr. Merwin Moore[2] noted no improvement in Plaintiff's ability to extend his right knee. Tr. 719. His knee continued to buckle, and there was an

---

[1] Plaintiff also suffered from seizure disorder and records reveal that Plaintiff injured his knee in a fall while experiencing a seizure. Although records do reveal some noncompliance on Plaintiff's part with regard to taking his anti-seizure medications, at the time of the accident, it does appear that Plaintiff was compliant.

[2] Dr. Moore is an orthopedic surgeon at Bone and Joint Associates, PLLC in Mountain Home, Arkansas.

4

obvious loss of the patellar tendon repair. He concluded that Plaintiff's only real option would be to reconstruct the knee with an allograft or a synthetic graft. However, Dr. Moore stated that Plaintiff needed to get his seizure disorder under control before this could be done, as continued seizures would likely result in re-injury.

In February and July 2010, one of Plaintiff's treating doctors, Dr. Paul Wilbur, completed RFC assessments. Tr. 13-17, 594-600, 608-614, 705-711, 748-759. Dr. Wilbur concluded that Plaintiff's abnormal right knee function initially resulted from a rupture of the patellar tendon that persisted status post surgical repair and would result in constant pain severe enough to interfere with the attention and concentration needed to perform even simple work tasks. He indicated that Plaintiff could not walk a city block without rest or severe pain, could sit no more than 2 hours at one time, and could stand for 20 to 45 minutes at one time before needing to sit down or walk around. Further, he indicted Plaintiff would be able to stand and walk for a total of less than 2 hours per 8-hour workday. Dr. Wilbur stated that Plaintiff could frequently lift up to 50 pounds; could rarely twist, stoop, and crouch; and, could never climb ladders or stairs. He indicated that Plaintiff also suffered from seizure disorder and mental problems that would affect his ability to work at a regular job on a sustained basis. Dr. Wilbur then went on to opine that Plaintiff met or exceeded the requirements for listing 1.02 for major dysfunction of a joint, and that his seizure disorder met or exceeded the epilepsy listing of 11.02. Tr. 9-10, 709-11.

Although after the date of the ALJ's final decision in this case, emergency room records dated April 2010 indicate that Plaintiff's knee problems persisted. Tr. 701. At this time, he presented with complaints of knee pain, stating that he had fallen in the parking lot, but was not certain whether his knee gave way or he experienced a seizure. Plaintiff struck his head and neck, resulting in lacerations. He was diagnosed with chronic knee instability with exacerbation. Tr. 701.

Again, in May 3, 2010, Plaintiff sought out emergency treatment for his chronic knee pain. Tr. 651-659. He requested something for the pain and a splint for his knee. Plaintiff was diagnosed with chronic knee pain status post patella fracture with rupture of the patella tendon with a history of revisions. Plaintiff was noted to have painful range of motion in his right knee. Tr. 635-650. And, in June 2010, Plaintiff presented in the emergency room after his right knee gave out on him. Tr. 688-694. An examination revealed a right knee deformity and the inability to fully extend his leg. X-rays showed a dislocation of the patella. In July 2010, Plaintiff fell again, after his leg gave out on him. Tr. 684-687.

Had this additional evidence been before the ALJ, we do believe it would have impacted her decision in this case. Accordingly, we believe remand is necessary to allow the ALJ to review and evaluate all of the additional medical evidence presented. The ALJ is reminded that the assessment of a treating physician must be properly considered. If it is determined that the evidence does not support the doctor's assessment, then the ALJ must provide clear reasons for discounting the assessment. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).

The record also reveals that Plaintiff was suffering from BIF, which the ALJ concluded was a severe impairment. She did not, however, include this in the hypothetical question posed to the vocational expert, instead opting to say only that Plaintiff had a limited education. *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir.1997) (holding that borderline intellectual functioning is a significant nonexertional impairment that must be considered by a vocational expert); *Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997) (same). "If a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or it is otherwise inadequate, a VE's response cannot constitute substantial evidence to support a conclusion of no disability." *See Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998). Therefore, remand is also necessary to allow the ALJ to re-examine Plaintiff's mental impairment and question the VE accordingly. *See Foreman v. Callahan,* 122 F.3d 24, 26 (8th Cir. 1997).

AO72A
(Rev. 8/82)

IV.     **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of August 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE